IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WAVLEY SANDERS,** ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 00-C-1228-S |
| **USX CORPORATION,** ) | |
| ) | |
| Defendant ) | |
| ) | |

FILED
01 APR 30 PM 10: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 1 2001

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

In this action under 42 U.S.C. § 2000e *et seq.* ("Title VII") and § 1981 alleging a racially discriminatory discharge, the Defendant USX Corporation ("USX") has moved for summary judgment against the Plaintiff Wavley Sanders. Based on the undisputed facts, the motion is due to be granted.

I.

The relevant facts, presented in a light favorable to Plaintiff, are fairly straightforward.

The Plaintiff, a black American, had been employed by the Defendant USX at its Fairfield (Alabama) Works for twenty-six years prior to his termination. During his employment, Plaintiff was a member of the United Steel Workers of America ("the Union").

USX is a fully integrated steelmaking facility. It manufactures steel from various raw materials. Some of the materials used in the steel-making process are stored in the Cotton Tie Building of the Fairfield Works. Aluminum is one of these materials. It is received by USX in a cone or pyramid shape. Typically, the aluminum cones are transported to an area called the

Caster by USX's 988F Loader, to be melted with other materials and processed into steel.

One of USX's subcontractors, Fritz Enterprises, has a building inside USX's property. Both USX and Fritz operate outside gates which front onto the road leading to USX's landfill and raw material yard (commonly called " Exum"), located about 1.5 miles from USX's main facility.

Sanders was working as mobile equipment operator ("MEO") on September 15, 1998, and at the time of his termination. As an MEO, Sanders operated USX's only 988F Loader.

Fritz also has a 988F loader which is operated by Guy McWaters.

McWatter reported observing the USX Loader in the early morning of September 15, 1998, headed toward the USX gate with its lights off. The Loader's bucket was titled back as if it were carrying a load. Another Fritz employee, Mark Baker, also saw the USX Loader on September 15 shortly after 6:00 a.m. Baker observed the Loader as it pulled up to the gate, then back up and start up the hill towards the Fritz gate and Exum. Baker observed that the bed of the USX Loader was half full of aluminum cones. He then saw a white Chevrolet pickup truck pull up beside the Loader. Suspicious of a possible theft, Baker reported the incident to his supervisor, Jackie Cardin, around 6:45 a.m. Cardin reported the incident to Fritz's Plant Manager Mike Pace.

Pace then went to Exum where he climbed up on a 5 to 6' high caster scale pile and observed a pile of aluminum 10' wide and 1½-2' high. It was the first time he had seen aluminum cones in that location. The USX Loader was working about 75-100' away. Pace reported the existence of the aluminum pile to Mark Brislin and Jeff Gage, USX's Manager and Assistant Manger for raw materials and scrap, respectively.

Brislin then inquired of Jimmy Vick, USX's Alloy Manager, whether any aluminum

2

cones had been sent to Exum for storage. After Vick responded in the negative, Brislin and Vick traveled to Exum. However, by the time they arrived, only remnants of the aluminum pile remained. Brislin observed scattered aluminum cones on the ground on the way from USX's Cotton Tie Shop to Exum. He also saw scoop marks from a loader. Brislin alerted the head of USX Plant Security, Joe Vice.

Sanders does not deny that he had aluminum cones in Loader on September 15.

USX conducted an investigation. As a result of the investigation, Sanders was suspended and ultimately discharged on September 22, 1998.

Sanders grieved his suspension and discharge to arbitration. The arbitrator found, *inter alia*:

> Here there is no question that [Sanders] was operating the USX 988F Loader on September 15, that he was handling aluminum cones with no satisfactory explanation, that the loader was seen by one disinterested witness heading for an exit with a half-bucket of cones in it, that aluminum cones were seen at Exum near where [Sanders] was working, and that most of these cones subsequently disappeared, leaving bucket scoop marks....
>
> ... [USX] presented facts that are most consistent with the theory that [Sanders] engaged in theft or attempted theft of substantial amounts of Company property. At the very least they required a detailed explanation or refutation. We cannot ignore significant discrepancies in [Sanders]'s story, such as the implausible reason first given and later denied for using the aluminum cones to calibrate his scales. [Sanders]'s failure to testify and explain himself did nothing to refute the [USX] position or to dispel doubts about his own accounts.

Arbitration Award, p. 9.

Sanders filed a charge of discrimination against USX with the Equal Employment Opportunity Commission ("EEOC"). Based on its investigation, the EEOC was unable to conclude that Title VII was violated by USX's discharge of the Plaintiff.

On September 29, Paul Stidham, a white dump truck driver for another subcontractor of

USX, gave to USX a statement in which he admitted that on September 24, 1998, he and Sanders loaded approximately 1800 pounds of aluminum cones onto his truck. Stidham stated that he subsequently sold the cones to a scrap dealer in Birmingham for $400, and that he gave $300 of the money to Sanders through one of Sanders' co-employees, Elijah Young. Like Sanders, Young is black.

After receiving Stidham's statement, USX then suspended Young, subject to discharge. Young filed a grievance. His grievance was sustained in arbitration.

There is no evidence that USX has retained any white employee whom it reasonably suspected of theft or attempted theft. There is no evidence that USX has retained or rehired a white employee discharged for theft after the discharge was upheld in arbitration.

II.

The law governing summary judgment is well settled. Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Earley v. Champion Int'l Corp.*, 907 F.3d 1077, 1081 (11th Cir. 1990). Once the moving party has met its burden of establishing the lack of genuine issue of material facts, the nonmoving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of material fact. *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). The court must view the facts in a light most favorable to the nonmoving party.

The Eleventh Circuit recently clarified the summary judgment standard in employment discrimination cases: "the summary judgment rule applies in job discrimination cases just as in other cases." *Chapman v. AL Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000). This decision abrogated the previous view that summary judgment was not a proper vehicle for employment

4

discrimination claims which often turn on an employer's motivation and intent. *Id.* at 1025 (citing *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 644 (11th Cir. 1987); *accord Batey v. Stone*, 24 F.3d 1330, 1336 (11th Cir. 1994)).

To establish a *prima facie* case of disparate treatment, Plaintiff must prove that (1) he was a member of a protected class; (2) he was qualified for the position at issue; (3) an adverse employment action was taken against him; and (4) the employer treated similarly situated employees outside the protected class more favorably. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

An employer's good faith belief in the reason articulated for an adverse employment action shields the employer from a claim of prohibited discrimination. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (finding that "if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not because of race, and the employer has not violated §1981").

### III

No one disputes that the Plaintiff easily meets the first three prongs of the *McDonnell-Douglas* test. He is a black American, he was qualified for the position which he held, and he suffered the quintessential adverse employment action. The rub is whether the Plaintiff has established a genuine dispute of whether a similarly situated white employee was treated differently.

In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, the Court must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Maniccia*, 171 F.3d at 1368.

Because the "quantity and quality of the comparator's misconduct must be nearly identical," The Plaintiff must demonstrate that the Defendant did not terminate white employees who were involved in or accused of attempted theft. *Id.*

The Plaintiff has identified three white employees whom he believes were also accused of attempted theft, but were not terminated. In particular, the Plaintiff alleges that Mike Garret and Doug Layton in the Tractor Shop are comparators. But the uncontroverted evidence is that these employees, so identified, do not exist.

The uncontroverted evidence shows that two white Tractor Shop employees, Beaty and Garner, suspected of theft by USX, were discharged. Like the Plaintiff, these men grieved their discharges to arbitration. However, unlike the Plaintiff, their grievances were upheld in arbitration. The Defendant had no option except to reinstate them. They are not similarly situated employees.

The Plaintiff seeks to compare himself to Paul Stidman, a non-employee of USX. Stidman is simply not a comparator by virtue of his non-employment by USX. Significantly, USX banned Stidman from its premises after he gave the incriminating statement.

Elijah Young is a comparator to Beaty and Garner. But he was treated in precisely the same manner as they were - and he is black!

USX has shown by a preponderance of the evidence that it discharged the Plaintiff based on its good faith belief that Plaintiff was guilty of the attempted theft when it terminated him.

6

By separate order, the Defendant's Motion for Summary Judgment will be granted.

Done this ___30th___ day of April 2001.

                                                                    Chief United States District Judge
                                                                          U. W. Clemon